A89A0014. ARNOLD et al. v. THE STATE.
(382 SE2d 174)

BIRDSONG, Judge.

Albert Kennedy Arnold, Jr., and Dorothy Smith Arnold appeal their conviction for trafficking in cocaine. They contend they were entitled to a directed verdict of acquittal on these grounds: "that there was no evidence to refute appellants' testimony that the cocaine and drugs were possessed by [two other persons] who had access to the premises involved . . . [and] the evidence was unrefuted that appellants had no intention or desire to exercise any dominion or control over the contraband." *Held:*

Appellants' evidence generally showed they were an "older couple" who had never been in trouble with the law, and had often traveled in pursuit of Mr. Arnold's career as a pipe fitter. They attempted to show they had come from Florida (their permanent home) and bought a house in Augusta, Ga., so as to set up a painting contracting business there with Mr. Arnold's brother. However, the brother, who lived in Florida, became ill and plans for the Augusta painting business faltered. In the meantime, Mr. and Mrs. Arnold met one Janet Melton and her boyfriend, Rick Barker, at a July 4 party. Although Barker did not seem to be a particularly attractive personality, the Arnolds invited Janet Melton and Rick Barker to live in the Augusta house from the date of sale closing (August 29, 1986) until the Arnolds were ready to move in. They were still traveling frequently between Florida and Georgia, attending to various business and family matters. They were in the house the weekend before the raid. At one point Rick Barker's bizarre behavior caused appellants to ask him to leave. He and Janet Melton left, but a few days later Janet returned. She had keys to the appellants' truck, and apparently had free reign in the house, using the master bedroom because it had its own bathroom and was the only room completely furnished. Rick Barker returned to the house and asked to leave some "stuff," which turned out to be a machine gun. The gun was immediately removed at the Arnolds' insistence; next day, the Arnolds returned to Florida.

Appellants had been in Augusta on Saturday and Sunday before the search warrant raid on Thursday afternoon, October 9, 1986. They went to Florida expecting to return the next weekend, but then

decided to return on Wednesday, October 8. They left Florida at 6:00 p.m. and arrived in Augusta at 3:00 a.m. Thursday, unexpected by Janet Melton. They found their house in great disarray and found a large amount of cocaine and "related matter" in the master bathroom. Mrs. Arnold told Janet Melton to take the cocaine and get out. Melton went to look for Rick Barker and returned alone about 9:00 a.m., appearing "scared." Mrs. Arnold avowed she would flush the cocaine down the toilet but Melton begged her not to do so, for then she and Rick Barker "might both be killed. She said that I didn't know . . . what kind of people they were dealing with. That if they didn't have the cocaine or the money that somebody was going to get hurt. . . . I thought about [calling the police but] I didn't do it because I didn't want Janet to get in trouble and I didn't want to get in trouble either." Again, Mrs. Arnold told Melton to "get the stuff out of there," but Melton "left to look for Rick again. Somebody stopped by to visit [Melton] . . . he went upstairs with Janet. I don't know who it was." (Evidently, it was the confidential informant.)

After Melton left to find Rick Barker, appellants called Larry Vickery, a friend, to come help. They did this "[b]ecause Rick Barker is nuts. We were afraid he might come in with that damn machine gun. He had been bragging the Saturday before about slashing his wife's new husband's tires. Poked holes in all the sides of them. We didn't know what he might do to us, to the car, or to anybody."

Appellants had helped Larry Vickery through a crisis in the past; he left his wife's home in Waynesboro and went to Augusta. He and the Arnolds then went to the shopping mall, "[t]o get out of the house." They walked and talked about an hour-and-a-half. Then they went to the grocery store. When they returned to their house, it was about 3:00 p.m.; "None of the stuff had been moved." Mrs. Arnold was putting groceries away when Janet Melton returned without Rick Barker, and she again told Melton to get out. About an hour later, when the police arrived with a search warrant, Mrs. Arnold was "[u]nloading groceries and getting ready to cook a steak." Rick Barker was never arrested.

Appellants contend that although they "were aware there was cocaine in their bathroom, their only wish regarding it was that it be taken away without anyone getting killed, hurt or in trouble with the law. There was no desire to exercise any dominion or control over it." Appellants contend they were entitled to a directed verdict of acquittal, particularly since Melton and Barker had equal access to the house; and that no head-of-household presumption applies because the appellants' testimony was unrefuted, for the State never called its witness, Janet Melton, to contradict it.

OCGA § 17-9-1 (a) provides: "Where there is no conflict in the evidence and the evidence introduced with all reasonable deductions

therefrom *shall demand* a verdict of acquittal or 'not guilty' . . . the court may direct the verdict of acquittal." (Emphasis supplied.) Appellants' credibility was for the jury to decide. It cannot be said that merely because the State did not call Janet Melton to contradict or refute the appellants' testimony, "the unrefuted evidence" demands a verdict of acquittal. There is a great deal of evidence in the case which, with all reasonable deductions therefrom, refutes appellants' insistence upon their innocence.

Viewing the evidence in favor of the verdict (see *Powers v. State*, 150 Ga. App. 25 (256 SE2d 637)), we conclude appellants' testimony regarding the painting business they intended to start in Augusta was not reasonably borne out. The evidence and exhibits at trial show clearly that a large amount of "white powder," or cocaine, and paraphernalia including scales and "baggies," were found in plain view throughout the house, and almost in every room. In several places, including the master bedside table, large sums of cash were found; three thousand dollars was found in a coat pocket in a closet. At least eight guns were found. Photo exhibits depict scenes on tables, chairs, and counters of such an array and activity commonly associated with cocaine sale and use, including large sums of cash, that, *as was said in the verdict*, it is unreasonable to believe the appellants could have been unaware of this activity, or that it could be hidden from them, even though they did frequently go to Florida. With the admittedly unattractive presence of Rick Barker and his machine gun, and his "bizarre behavior" so plainly before them, it is unreasonable to believe they did not notice a single flea on the dog.

Moreover it is unreasonable to conclude that, (in addition to these hints of unsavory character), this vast deposit of drugs, paraphernalia, guns and ammunition and thousands of dollars in cash, arrayed throughout the house, bespoke a pursuit of drug sales and related activities on such a large scale as could not reasonably have remained hidden from the appellants, or would not reasonably have ceased altogether when they were at home. And it evidently beggared the jury's belief that after they came home and found this trove, the appellants, though being in the direct fear that someone would be killed imminently, did nothing towards calling the police; but instead, *because* Rick Barker was "nuts," they were afraid he *"might come in with a machine gun,"* and they did not know *"what he might do to us . . . or to anybody,"* they invited a friend to share this troubled environment. And, further, it does not seem entirely reasonable that when the friend arrived they merely visited the mall and the grocery store, and proceeded to unload groceries and cook a steak, as if this situation, of which they literally were afraid to death, did not exist, or would continue indefinitely.

Altogether, even without any presumption arising out of their

ownership of the household, the evidence is such that reasonable jurors could rationally have found proof of appellants' guilt of the crimes charged, beyond a reasonable doubt, under the standard laid down in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). That being so, it cannot possibly be said that the case should have been removed from the jury and the appellants set free because their testimony of innocence was "unrefuted." Certainly it cannot be said that all the evidence and *all reasonable deductions therefrom demanded* a verdict of acquittal pursuant to OCGA § 17-9-1 (a).

*Judgment affirmed. Deen, P. J., concurs. Benham, J., concurs in judgment only.*

Decided May 4, 1989.

*Richard E. Allen,* for appellants.

*Sam B. Sibley, Jr., District Attorney, Charles R. Sheppard, Assistant District Attorney,* for appellee.